UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CHRISTINE TROUTMAN,
on behalf of herself and all
others similarly situated,

        Plaintiff,                                     Case No. 20-cv-332

   v.

WESTON MEMORY CARE, LLC, *et al.*

        Defendants

---

**SECOND RENEWED MOTION FOR AND JOINT SUPPLEMENTAL BRIEF IN
SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
COLLECTIVE AND CLASS ACTION SETTLEMENT**

---

## INTRODUCTION

On March 24, 2021, Plaintiff, Christine Troutman, on behalf of herself and all others similarly situated, and Defendants, Sanctuary Care Group, LLC, Weston Memory Care, LLC, Midwest Assisted Living Partners, LLC, Midwest Assisted Living Partners I, LLC, Midwest Assisted Living Partners II, LLC, and Midwest Assisted Living Partners III, LLC (jointly "Defendants" and, with Plaintiff, the "Parties"), jointly moved this Court for preliminary approval of the Parties' settlement of this lawsuit in accordance with their Settlement Agreement and Release of Claims. (ECF No. 56.)

On June 30, 2021, this Court entered its Opinion and Order denying the Parties' motion without prejudice (this Court's "Order"). (ECF No. 59.) In response to that Order, the Parties submitted their *Renewed Motion for and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement*, ECF No. 60 ("Renewed

Motion"), in an effort to address the Court's three (3) concerns with their initial filings. (*See* ECF No. 56.)

Subsequently, on September 22, 2021, this Court entered an Order denying the Parties' Renewed Motion. (ECF No. 63.) Therein, this Court outlined three (3) lingering concerns with the Parties' filings and their Settlement Agreement. The present *Second Renewed Motion for and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement* ("Second Renewed Motion") is filed for the purpose of addressing those concerns and supporting the Parties' continued effort to obtain preliminary approval of their Settlement Agreement.

Support for this Second Renewed Motion is set forth herein, as well as in: the Parties' initial *Joint Motion for Preliminary Approval of Collective and Class Action Settlement*, ECF No. 56; the Parties' Renewed Motion, ECF No. 60; the Declaration of James A. Walcheske in Support of Motions, ECF No. 58; the Supplemental Declaration of James A. Walcheske, ECF No. 61; the Declaration of Geoffrey S. Trotier, ECF No. 62; the Second Supplemental Declaration of James A. Walcheske, filed concurrently herewith; the Declaration of Larry A. Johnson, filed concurrently herewith; and the Declaration of David Zoeller, filed concurrently herewith.

I. **THE TOTAL NUMBER OF INDIVIDUALS AFFECTED BY THE PARTIES' SETTLEMENT, THE NUMBER OF INDIVIDUALS COMPRISING THE FLSA COLLECTIVE, THE NUMBER OF INDIVIDUALS COMPRISING THE RULE 23 CLASS, AND THEIR SETTLEMENT AMOUNTS**

The Court's first concern as set forth in its Order was "discrepancies with some of the figures that the parties provided," namely the number of class members and the amount of the Parties' settlement allocated to members of the collective and class. (ECF No. 63, p. 1.) With respect to the number of class members, this Court noted: "In their original motion, the parties stated that there are 391 members of the proposed class. Dkt. 57, at 4. In their proposed settlement,

2

they say that there are 337 members in the class, along with 121 members of the collective. Dkt. 60-1, at 11." (ECF No. 59, p. 1.) As an explanation, the reason for what appears to be a discrepancy was the Parties' separation of all members of the Settlement Classes for settlement purposes.

As indicated in their *Joint Stipulation to Certify a Class Action Pursuant to Fed. R. Civ. P. 23 and to Certify Class Counsel and the Named Plaintiff as Representative for the Class*, the Parties identified 391 individuals who were affected by Defendants' policies within the two (2) years prior to the filing of this action and, therefore, qualified as putative members of the Rule 23 Class. (ECF No. 57, p. 2; *see also* ECF No. 58, ¶ 16.) Of those 391 individuals, 54 previously consented to join the litigation and thus, under the terms of the Parties' Settlement Agreement, fall within the FLSA Collective for purposes of that settlement. (Second Supplemental Declaration of James A. Walcheske ("Walcheske Sec. Supp. Decl."), ¶ 19.) The remaining 337 individuals who did not previously consent to join the lawsuit thus comprise the Rule 23 Class for settlement purposes. (*Id.*) These groups were defined and kept separate under the terms of the Parties' Settlement Agreement for purposes of allocating their amounts payable thereunder, as well as delineating the claims they were waiving pursuant thereto.

Separate from the Rule 23 Class, the FLSA Collective is composed of 121 individuals, including the aforementioned 54 individuals who also technically qualify as members of the Rule 23 Class. (*Id.*) The remainder of the FLSA Collective is comprised of individuals who qualified as a result of consenting to join the litigation and pursuant to the FLSA's three (3) year statute of limitations as used for settlement purposes.

In its Order, the Court additionally noted that "[i]n their renewed motion, plaintiffs say that 109 current and former employees meet the class definition; defendants say it is 107 employees. Dkt. 60, at 5-6." (*Id.*) To clarify, and as indicated above, 391 individuals meet the class definition,

not 107 or 109. The Parties' references to 107 individuals versus 109 individuals were made in the context of explaining the Parties' relative and divergent settlement positions. (*See* Supplemental Declaration of James A. Walcheske, ECF No. 61 ("Walcheske Supp. Decl.") ¶¶ 7-11; Renewed Motion, pp. 5-7.) As explained in the Parties' Renewed Motion, given the wide variance in the amounts owed as calculated by the Parties, as well as their divergent views on both damages and liability, the Parties' negotiations and ultimate resolution related to amounts equally applicable to all members of the FLSA Collective and Rule 23 Class, rather than using the specific amounts potentially owed to each individual. (Walcheske Supp. Decl., ¶ 12; Renewed Motion, p. 7.)

This Court's final concern regarding discrepancies was that while "the parties consistently contend that each member of the class will receive $15 and each member of the collective will receive $30," they do not explain "how those amounts add up to $8,106." (ECF No. 63, p. 2.) In short, they do not. In reviewing the Court's concerns, the Parties uncovered an error relating back to their negotiations that was not corrected or revised in the course of translating their agreement in principle to their ultimate Settlement Agreement. To correct this error, the Parties have entered into a Second Amended Settlement Agreement and Release of Claims, attached hereto as Exhibit A. Under this Settlement Agreement, the overall amount of the settlement was increased $579.00 to $54,899.76, which allowed for the allocation of $8,685.00 to the collective and class, such that all members of the FLSA Collective receive $30.00 (for a total of $3,630.00) and all members of the Rule 23 Class receive $15.00 (for a total of $5,055.00) as intended. In keeping with this amendment, the Parties' Proposed Notice was also amended to reflect this change.

II.     **THE FAIRNESS AND REASONABLENESS OF PLAINTIFF'S SERVICE AWARD**

The Court's second concern "is that the parties still haven't justified the proposed $2,000 incentive award for named plaintiff Christine Troutman." (ECF No. 63, p. 2.)

4

As well-summarized by the United States District Court for the Northern District of Illinois, Eastern Division:

> Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. '[B]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ('[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.') (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).
>
> Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g., Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

*Briggs v. PNC Fin. Servs. Grp., Inc.*, No.1:15-cv-10447, 2016 WL 7018566, at *2 (N.D. Ill. Nov. 29, 2016).[1]

---

[1] This and all other unpublished decisions cited herein are attached as exhibits to the Second Supplemental Declaration of James A. Walcheske.

5

Here, Plaintiff brought her case against Defendants while she was still actively employed therewith, subjecting herself to potential adverse ramifications in the workplace for doing what she believed was right while others in her same position are often not willing to do so for fear of reprisal. (Walcheske Supp. Decl., ¶ 14.) Moreover, she commenced and prosecuted the litigation as its only named plaintiff, thereby assuming even greater risks: "if the class action suit fails, no incentive will be made," *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 876 (7th Cir. 2012), and "should the suit fail, [s]he may find [her]self liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees." *Id*. "The incentive reward is designed to compensate [her] for bearing these risks, as well as for any time…participating in the litigation as any plaintiff must do." *Id.*

Prior to commencing this action, Plaintiff spent hours working with her counsel and obtaining records and providing the information necessary to support and prosecute her claims. Once the case was underway, Plaintiff was heavily involved in the matter and Plaintiff's counsel consulted with and relied upon information provided by Plaintiff in negotiating and ultimately resolving this case on her behalf, as well as on behalf of the Settlement Classes. (Walcheske Supp. Decl., ¶ 15; *see also* Walcheske Sec. Supp. Decl., Exhibit ("Ex.") A (containing billing entries referencing ongoing communications with Plaintiff.)

As explained in the Parties' Renewed Motion, the amounts Plaintiff obtained as a result of her efforts are not simply representative of the best-case scenario amounts each member of the Settlement Classes could potentially be owed, but also greater than those amounts save for a very select few. (Renewed Motion, p. 7; *see also* Walcheske Supp. Decl., ¶¶ 18-19.) Without Plaintiff's assistance, that result would not have been achieved. (Walcheske Supp. Decl., ¶ 15.)

6

As a reward for her efforts, the results achieved, and the risks she faced in commencing and prosecuting this case, the Parties agreed that Plaintiff will receive a Service Award, subject to Court approval, in the total amount of $2,000.00. (ECF No. 64-1, Ex. A § III.B.1; *see also* ECF No. 58, ¶¶ 22-23; Walcheske Supp. Decl., ¶ 13.) This Award was agreed-upon between the Parties and negotiated separately from the amounts paid to the members of the FLSA Collective and Rule 23 Class. Ultimately, the approval of Plaintiff's Service Award by this Court will not affect, in any way, the amounts paid to the FLSA Collective and Rule 23 Class via the settlement. (ECF No. 58, ¶ 23; *see also* Walcheske Supp. Decl., ¶ 13.)

Such an Award is commensurate with amounts awarded by other district courts in this circuit, which "have awarded incentive fee awards ranging from $5,000 to $25,000." *Daluge v. Cont'l Cas. Co.*, No. 15-cv-297-WMC, 2018 WL 6040091, at *3 (W.D. Wis. Oct. 25, 2018) (collecting cases). Here, and given Plaintiff's service in this case and the result Plaintiff obtained for all members of the Settlement Classes, Plaintiff's Service Award of $2,000.00 is reasonable and well within the range of similar service payments approved by this Court and Wisconsin Districts in similar collective and class action cases.[2] This includes cases in which the amounts

---

[2] *See, e.g.*, *Kelly v. Hudapack Metal Treating, Inc.*, No. 20-cv-130-BHL, ECF No. 37 (E.D. Wis., June 24, 2021) (service award of $3,000.00); *Hoaglan v. Heritage Senior Living, LLC*, No. 19-cv-1361-LA, ECF No. 30 (E.D. Wis., Mar. 19, 2021) (service award of $5,000.00); *Henderson, et. al. v. Russ Darrow Group, Inc.*, No. 20-cv-1421-JPS, ECF No. 51 (E.D. Wis., Mar. 16, 2021) (service awards of $2,500.00 to each named plaintiff); *Merschdorf v. DC Industries, Inc.*, No. 19-cv-1037-JDP, ECF No. 45 (W.D. Wis., Mar. 4, 2021) (service award of $3,000.00); *Henderson v. Automated Pet Care Products, Inc.*, No. 19-cv-1640-LA, ECF No. 41 (E.D. Wis., Feb. 9, 2021) (service award of $5,000.00); *Medina v. Automax Financial, LLC*, No. 19-cv-1582-JPS, ECF No. 41 (E.D. Wis., Jan. 29, 2021) (service award of $7,500.00); *Schmitt v. Color Craft Graphic Arts, LLC*, No. 19-cv-1705-WCG, ECF No. 40 (E.D. Wis., Nov. 13, 2020) (service award of $2,500.00); *Bills v. TLC Homes, Inc.*, No. 19-cv-148-PP, ECF No. 53 (E.D. Wis., Oct. 8, 2020) (service award of $3,500.00); *Clark v. Brunswick Corp.*, No. 19-cv-141-WCG, ECF No. 44 (E.D. Wis., May 22, 2020) (service award of $2,500.00); *Doberstein v. East Wisconsin Savings Bank*, No. 18-cv-1931-WCG, ECF No. 35 (E.D. Wis., Nov. 26, 2019) (service award of $2,500.00); *Johnson v. National Technologies, Inc.,* No. 18-cv-462-DEJ, ECF No. 57 (E.D. Wis., July 22, 2019) (service award of $8,500.00); *Paswaters v. Krones, Inc.,* No. 19-cv-993-JPS, ECF No. 61 (E.D. Wis., July 12, 2019) (service award of $7,500.00); *Eckstein v. St. Paul Elder Services, Inc.*, No. 19-cv-945-WCG, ECF No. 38 (E.D. Wis., June 28, 2019) (service award of $2,500.00); *Slaaen, et al. v. Senior Lifestyle Corporation, et al.*, No. 18-cv-1562-JPS, ECF No. 92 (E.D. Wis., Oct. 3, 2018) (service awards of $7,500.00 to each named plaintiff).

recovered by the respective collectives and classes are comparable to (or in some cases less than) the amounts recovered here. *See, e.g., Hoaglan*, No. 19-cv-1361-LA, ECF No. 16-1 ($5,000 service award where average recovery was $16.59 per class member); *Schmitt*, No. 19-cv-1705-WCG, ECF No. 20-1 ($2,500 service award where class recovery totaled $3,074.72); *Bills*, No. 19-cv-148-PP, ECF No. 27 ($3,500 service award where average recovery was $32.45 per class member and class recovery totaled $12,689.13); *Clark*, No. 19-cv-141-WCG, ECF No. 25-1 ($2,500 service award where average recovery was $21.30 per class member and class recovery totaled $11,694.53); *Doberstein*, No. 18-cv-1931-WCG, ECF No. 23 ($2,500 service award where class recovery totaled $249.52); *Eckstein*, No. 19-cv-945-WCG, ECF No. 18-1 ($2,500 service award where average recovery was $19.97 per class member and class recovery totaled $7,712.74).

For all such reasons, the Parties' agreed upon Service Award is fair and reasonable and should be approved.

### III. PLAINTIFF COUNSEL'S REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE

The Court's third and final concern relates to Plaintiff's counsel's requested reimbursement of attorneys' fees and costs not to exceed $44,214.76. As stated by the Court, "Class counsel hasn't demonstrated that the class would be likely to accept approximately $8,000 in benefits for more than $40,000 in fees," and that "Class counsel will need to explain why a reduction isn't appropriate in this case." (ECF No. 63, p. 3.)

At the outset of this matter, Plaintiff's counsel accepted the case on a contingency basis, through which Plaintiff agreed to compensate Plaintiff's counsel with the greater of forty percent (40%) of any recovery, exclusive of costs, should a recovery be obtained, or the actual amount of attorneys' fees and costs billed or settled for. (Walcheske Sec. Supp. Decl., ¶ 14.) Counsel structures its agreements in such a manner because of cases such as this where the anticipated

8

recovery is relatively "low" and, therefore, not suitable for division as a class fund. (*Id.*) Pursuant to its fee arrangement with Plaintiff, Plaintiff's counsel agreed to be responsible for all attorneys' fees and costs in the event of an adverse result and, to date, counsel has not received any compensation for its time spent on the case or reimbursement for its costs expended investigating, litigating, administrating, and resolving this matter. (*Id.* at ¶ 15.)

Plaintiff's counsel's billing records are provided to the Court as Exhibit A to the Second Supplemental Declaration of James A. Walcheske. As reflected therein, during the litigation of this matter, counsel: investigated Plaintiff's claims; drafted and filed the Complaint and corresponding filings; participated in a Rule 26(f) Conference and jointly prepared a Rule 26(f) Conference Report; prepared Plaintiff's Initial Disclosures; engaged in comprehensive written discovery, including written interrogatories and requests for production of documents (served on Defendants on September 28, 2020); reviewed Defendants' discovery responses (served on me on October 27, 2020); drafted and filed Plaintiff's Amended Complaint; drafted pleadings such as Stipulations filed through the matter, (*see* ECF Nos. 14, 16, 21); drafted the proposed Notice to putative members of the conditionally-certified collective; reviewed, prepared and filed numerous *Notice of Filing of Consent to Join Forms* and executed *Consent to Join Forms* received from opt-in plaintiffs, (*see* ECF Nos. 27-44); corresponded and communicated with putative members of the conditionally-certified collective; engaged in numerous communications with Plaintiff, the other attorneys at counsel's firm, and Defendants' counsel relating to this matter, including but not limited to the settlement negotiations that ultimately lead to the parties reaching their agreement in principle; spent considerable time conducting, reviewing, and analyzing damages calculations relating to employees at Defendants' Deforest, Wisconsin location as provided by Defendants on November 20, 2020; conducted damages calculations and created damages models; collaborated

with Defendants' counsel on the parties' settlement agreement and proposed Notice; drafted the parties' *Joint Motion for Preliminary Approval of Collective and Class Action Settlement* and all related filings, ECF Nos. 56-58; drafted the parties' *Renewed Motion and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement* and all related filings, ECF Nos. 60-61; and drafted the parties' *Second Renewed Motion and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement* and all related filings. (Walcheske Sec. Supp. Decl., ¶ 21, Ex. A; *see also* ECF No. 58, ¶ 15.)

Assuming the Parties obtain preliminary approval of their settlement, Plaintiff's counsel anticipates engaging in additional activities including: administration of Notice of the Parties' settlement; communicating and corresponding with Plaintiff, Defendants' counsel, and members of the FLSA Collective and putative members of the Rule 23 Class; drafting and filing the Parties' joint motion for final approval of their settlement; and attending the Fairness Hearing, among other post-settlement activities. (Walcheske Sec. Supp. Decl., ¶ 22; *see also* ECF No. 58, ¶ 21.)

As reflected in counsel's billing records, Plaintiff's counsel has devoted approximately 116.3 hours to this matter through the end of September 2021: 100.6 hours by Attorney James A. Walcheske and 15.6 hours by Attorney Scott S. Luzi. (Walcheske Sec. Supp. Decl., ¶¶ 23-24, Ex. A.)

Generally, in awarding or approving a fee award a court determines the market price for a lawyer's legal services via either "common fund principles"[3] or the "lodestar" method. Ultimately,

---

[3] *Florin v. Nations St. Paul of Georgia, N.A.*, 34 F.3d 560, 563-64 (7th Cir. 1994) (noting that "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund," and that, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund."); *see also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007); *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005).

and regardless of the method by which a plaintiff petitions the court for an award of attorneys' fees and costs, the court "must do [its] best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*"Synthroid I"*); *see also In re Synthroid Mktg Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (*"Synthroid II"*); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013); *Steinlauf v. Cont'l Illinois Corp.*, 962 F.2d 566, 572-73 (7th Cir. 1992) (stating, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client").

As previously noted in the Parties' Renewed Motion, because counsel's requested reimbursement of fees and costs is not a percentage of a common settlement fund, Plaintiff motions this Court for an award of attorneys' fees and costs via the "lodestar" method, which is determined by multiplying counsel's "reasonable" hourly rate by the number of hours reasonably expended on the case. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d 1249,1255 (7th Cir. 1995).

A "reasonable" hourly rate reflects the "market rate" for the attorney's services. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's actual billing rate for comparable work or similar litigation is appropriate to use as

the market rate. *Pickett*, 664 F.3d at 640; *Denius*, 330 F.3d at 930; *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *People Who Care*, 90 F.3d at 1310; *Uphoff*, 176 F.3d at 407. Ultimately, a fee applicant need only offer third party affidavits attesting to comparable billing rates to meet her burden. *Pickett*, 664 F.3d at 641; *Spegon*, 175 F.3d at 556.

During the entirety of this litigation, Plaintiff's counsel billed at their usual and customary rates of $400.00 per hour. (Walcheske Sec. Supp. Decl., ¶ 10, Ex. A; *see also* ECF No. 58, ¶ 9.) Districts in this State have previously approved this hourly rate as reasonable in class and collective actions such as this.[4] As further support for the reasonableness of counsel's rates and their representativeness of the market rate in cases such as this, the Declarations of Larry A. Johnson and David Zoeller are filed herewith.

Thus, applying the lodestar method in this case by multiplying counsel's reasonable rate of $400.00 per hour times their 116.3 hours expended yields total attorneys' fees through the end of September 2021 of $46,520.00. (Walcheske Sec. Supp. Decl., ¶ 24.)

In addition to seeking reimbursement of their fees devoted to this matter, Plaintiff's counsel seeks reimbursement of its out-of-pocket litigation and administration expenses. To date, Plaintiff's counsel has incurred and has not received any reimbursement for a total of $3,671.25 in costs. (*Id.* at ¶ 26, Ex. B.) This includes the filing fee ($400.00), postage ($2.00), and administration costs ($3,269.25). (*Id.*)

Pursuant to the Parties' Settlement Agreement, Plaintiff's counsel is responsible for administration of that settlement. (*Id.* at ¶ 27.) Accordingly, counsel reasonably anticipates

---

[4] *See, e.g., Kelly,* Case No. 20-cv-130-BHL, ECF No. 37 (E.D. Wis. June 24, 2021); *Hoaglan,* Case No. 19-cv-1361-LA, ECF No. 30 (E.D. Wis. Mar. 19, 2021); *Henderson*, Case No. 20-cv-1421-JPS, ECF No. 51 (E.D. Wis. Mar. 16, 2021); *Merschdorf*, Case No. 19-cv-1037-JDP, ECF No. 45 (W.D. Wis. Mar. 4, 2021); *Henderson*, Case No. 19-cv-1640-LA, ECF No. 41 (E.D. Wis. Feb. 9, 2021); *Medina,* Case No. 19-cv-1582-JPS, ECF No. 41 (E.D. Wis. Jan. 29, 2021); *Bills,* Case No. 19-cv-148-PP, ECF No. 53 (E.D. Wis. Oct. 8, 2020); *Doberstein*, Case No. 18-cv-1931-WCG, ECF No. 35 (E.D. Wis. Nov. 26, 2019); *Johnson,* Case No. 18-cv-462-DEJ, ECF No. 57 (E.D. Wis. July 22, 2019); *Paswaters,* Case No. 19-cv-993-JPS, ECF No. 61 (E.D. Wis. July 12, 2019).

incurring approximately $3,300.00 in additional administration costs relating to the settlement, which would result in a total amount of unreimbursed costs of $6,971.25. (*Id.*; *see also* Walcheske Supp. Decl., ¶ 20.)

As part of the settlement of this case, and upon approval by this Court, Defendants have agreed to pay Plaintiff's counsel's negotiated fees and costs in an amount not to exceed $44,214.76. (*Id.* at ¶ 28.) Based on the figures provided above, which do not account for the value of any work performed by counsel subsequent to the end of September 2021, this negotiated amount results in a recovery of fees and costs $9,276.49 less than those actually (and reasonably anticipated as pertains to future administration costs) incurred.

For all such reasons, counsel's requested attorneys' fees and costs as negotiated and agreed upon by the Parties are fair and reasonable and should be awarded without deduction.

## CONCLUSION

For all the reasons stated herein, as well as all those set forth in the Parties' *Joint Motion for Preliminary Approval of Collective and Class Settlement*, ECF No. 56, and their Renewed Motion, the Parties again respectfully request that the Court enter an order that: (1) preliminarily approves the Settlement Agreement (as revised and filed herewith); (2) certifies, for settlement purposes only, the conditionally certified FLSA Collective and proposed Rule 23 Class; (3) appoints Walcheske & Luzi, LLC as Class Counsel; (4) appoints Plaintiff, Christine Troutman, as representative of the Rule 23 Class; (5) approves the mailing of Notice to all FLSA Collective and Rule 23 Class members in a form substantially similar to the revised Notice filed herewith; (6) find that such Notice process satisfies due process; (7) sets deadlines for members of the Rule 23 Class to opt out of the case or object to the Settlement Agreement; (8) directs that all FLSA Collective members and any member of Rule 23 Class who has not properly requested exclusion

shall be bound by the Settlement Agreement in the event the Court issues a Final Order Approving Settlement; (9) a direction that any member of the Rule 23 Class who wishes to object to the Settlement Agreement in any way must do so per the instructions set forth in the Notice; and (10) schedules a hearing for final approval of the Settlement Agreement after the expiration of sixty (60) days after approval of this Joint Motion.

Dated:  October 5, 2021           By: s/ *James A. Walcheske*
                                        James A. Walcheske, State Bar No. 1065635
                                      Scott S. Luzi, State Bar No. 1067405
                                      Walcheske & Luzi, LLC
                                      235 N. Executive Drive, Suite 240
                                      Brookfield, Wisconsin 53005
                                      Telephone: (262) 780-1953
                                      Email:  jwalcheske@walcheskeluzi.com
                                      Email:  sluzi@walcheskeluzi.com

                                      *Attorneys for Plaintiff*


Dated:  October 5, 2021           By:  s/ *Geoffrey S. Trotier*
                                        Geoffrey S. Trotier, State Bar No. 1047083
                                      Craig T. Papka, State Bar No. 1093078
                                      von Briesen & Roper, s.c.
                                      411 E. Wisconsin Avenue, Suite 1000
                                      Milwaukee, Wisconsin 53202
                                      Telephone: (414) 287-1369
                                      Email: gtrotier@vonbriesen.com
                                      Email: cpapka@vonbriesen.com

                                      *Attorneys for Defendants*