UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CHRISTINE TROUTMAN,
on behalf of herself and all
others similarly situated,

      Plaintiff,

v.

WESTON MEMORY CARE, LLC, *et al.*

      Defendants

Case No. 20-cv-332

---

**JOINT MOTION FOR AND BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT, PLAINTIFF'S SERVICE AWARD, AND COUNSEL'S AWARD OF FEES AND COSTS**

---

Plaintiff, Christine Troutman, on behalf of herself and all others similarly situated, and Defendants, Sanctuary Care Group, LLC, Weston Memory Care, LLC, Midwest Assisted Living Partners, LLC, Midwest Assisted Living Partners I, LLC, Midwest Assisted Living Partners II, LLC, and Midwest Assisted Living Partners III, LLC (jointly "Defendants" and, with Plaintiff, the "Parties"), jointly move this Court for final approval of the Parties' *Second Amended Settlement Agreement and Release of Claims*, ECF No. 64-1 ("Settlement Agreement"), as preliminarily approved by this Court on November 19, 2021. (ECF No. 68.)

**PROCEDURAL POSTURE**

On March 24, 2021, the Parties jointly moved this Court for preliminary approval of the Parties' Settlement Agreement. (ECF No. 56.) On June 30, 2021, this Court entered its Opinion and Order denying the Parties' motion without prejudice. (ECF No. 59.) In response to that Order, the Parties submitted their *Renewed Motion for and Joint Supplemental Brief in Support of Motion*

*for Preliminary Approval of Collective and Class Action Settlement*, ECF No. 60 ("Renewed Motion"), in an effort to address the Court's three (3) concerns with their initial filings. (*See* ECF No. 56.)

Subsequently, on September 22, 2021, this Court entered an Order denying the Parties' Renewed Motion. (ECF No. 63.) Therein, this Court outlined three (3) concerns with the Parties' filings and their Settlement Agreement. (*See id.*) On October 5, 2021, the Parties submitted their *Second Renewed Motion for and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement*, ECF No. 64 ("Second Renewed Motion").

On November 19, 2021, this Court entered an Order preliminarily approving the Parties' Settlement Agreement, ECF No. 68 (the Court's "Preliminary Approval Order").

On December 3, 2021, Plaintiff's counsel caused the Court-approved Notice to be mailed to all members of the class. (*Declaration of James A. Walcheske in Support of Final Approval*, ECF No. 71 ("Walcheske Final Approval Decl."), ¶ 2.) Pursuant to the Parties' Settlement Agreement and this Court's Preliminary Approval Order, class members had forty-five (45) days, or until January 17, 2022, to opt-out of or otherwise object to the Parties' settlement. (Settlement Agreement, pp. 16-17, 25, 28-29; Preliminary Approval Order, p. 8.)

As of January 17, 2022, only one request for exclusion was received, which was filed with the Court on January 5, 2022. (ECF No. 69.) No other opt-out requests or objections were received as of the close of the notice period on January 17, 2022. (Walcheske Final Approval Decl., ¶ 4.) As of the date of this Motion, February 2, 2022, no objections or additional requests for exclusion have been received. (*Id.*)

As a result, in addition to the 121 members of the collective, 336 of a possible 337 class members[1] are participating in and will receive settlement payments through the Parties' settlement. (*Id.* at ¶ 5.) Per the terms of the Parties' Settlement Agreement, each of the 121 members of the collective will receive $30.00, and each of the 336 participating members of the class will receive $15.00. (Settlement Agreement, pp. 10, 25, 27-28.)

## ARGUMENT

I.   **FINAL SETTLEMENT APPROVAL STANDARD**

A Court may approve of the settlement of a Fed. R. Civ. P. 23 class action if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, the court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class/collective members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers other factors when determining whether a proposed class action settlement is fair, adequate, and reasonable, such as: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir.

---

[1] While the class is comprised of 391 individuals, 54 such individuals are also members of the collective. (*Second Supplemental Declaration of James A. Walcheske*, ECF No. 65, ("Walcheske Sec. Supp. Decl."), ¶ 19.) For purposes of the Parties' settlement, those 54 individuals are strictly considered members of the collective. (*Id.*) Thus, the maximum size of the class for settlement purposes was 337 individuals. (*Id.*)

1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. Cal. Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)). Ultimately, resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996).

## II.  FINAL SETTLEMENT APPROVAL IS APPROPRIATE IN THIS CASE

This case involved *bona fide* disputes regarding whether Defendant violated the FLSA and the WWPCL as alleged by Plaintiff, including disputes on liability, class and collective certification, and damages, as demonstrated by the Parties' pleadings in this case, as well as the Declarations filed in support of the Parties' Settlement Agreement. (*See, e.g.,* ECF Nos. 9, 11, 26.) Indeed, in the Parties' *Joint 26(f) Conference Report*, Defendant explicitly denied that Plaintiff was employed by the named Defendants, generally denied the allegations in Plaintiff's Complaint, and alleged that they "adequately compensated its employees for all hours worked in accordance with the law." (ECF No. 11.)

Subsequently, in *Defendants' Answer and Affirmative Defenses to Amended Complaint*, Defendants denied the vast majority of the allegations contained in Plaintiff's Amended Complaint, and pleaded fourteen (14) affirmative defenses to her claims that directly opposed the suitability of this litigation for collective or class action treatment, as well as the nature of the bonuses at issue in this case, affirmatively pleading, in part: "The bonuses to which Plaintiff refers in her complaint were discretionary and not includable in the regular rate." (ECF No. 36.)

Leading into and during the Parties' arm's length settlement negotiations, Defendants continued to maintain that the bonuses and additional compensation at issue in this litigation were discretionary and not includable in its employees' regular rates of pay. (*See Declaration of James A. Walcheske in Support of Motions*, ECF No. 58 ("Walcheske Decl."), ¶ 22; *Supplemental Declaration of James A. Walcheske*, ECF No. 61 ("Walcheske Supp. Decl."), ¶ 3; *Declaration of*

4

*Geoffrey S. Trotier*, ECF No. 62 ("Trotier Decl."), ¶ 3.) Subsequently, after the parties exchanged and analyzed the records of two hundred and twenty-five (225) employees, the Parties further disagreed about a range of issues, including the number of individuals impacted (109 versus 107), the amounts such individuals were potentially owed, and the average amount of overtime compensation potentially owed to such individuals ($9.38 excluding liquidated damages versus $6.60 excluding liquidated damages). (Walcheske Supp. Decl., ¶¶ 7, 9-10; Trotier Decl., ¶¶ 5-6.)

Despite these disputes, the Parties engaged in ongoing, substantive, arms' length and good faith settlement discussions and negotiations, the fruits of which are embodied in their Settlement Agreement. (*See* Walcheske Decl., ¶¶ 12-14, 16-20, 23; Walcheske Supp. Decl., ¶¶ 3-12.) During this time, and after the parties exchanged monetary offers and preliminarily agreed on settlement terms and conditions, counsel for the Parties worked directly to draft and finalize their Settlement Agreement. (Walcheske Decl., ¶ 20.)

Thus, although the Parties resolved their disputes amicably, this litigation was legally, strategically, and procedurally complex and subject to dispute on each level, such that the amount of work put into the matter by the Parties was necessary and warranted, in relation to the overall amount of monies to be recovered by the collective and class through the Parties' Settlement Agreement. (*Id.* at ¶ 22.) Therefore, and as further explained below in relation to the method of calculation for each class member, the Parties believe their Agreement to be fair, reasonable, and adequate under all such circumstances.

## III.   THE METHOD OF CALCULATION FOR EACH CLASS MEMBER

In its Preliminary Approval Order, the Court noted that the information the Parties provided regarding their method of determining what each class member allegedly was owed was "enough for preliminary approval. But when the parties submit their motion for final approval, they should

include the primary evidence they relied on to calculate the class's damages, along with a declaration that explains the process they used to determine the amount." (ECF No. 68, pp. 3-4.)

In the litigation, Plaintiff alleged that Defendants failed to include all forms of nondiscretionary compensation in their non-exempt employees' regular rates of pay for overtime calculation and compensation purposes in those workweeks in which they received such compensation and worked more than forty (40) hours in a workweek. (*See* ECF No. 24.)

During the discovery phase of this case, the Parties determined that the additional (potentially nondiscretionary) forms of compensation paid to Plaintiff and other putative members of the collective and class included: "NOC Shift" (night shift) premiums for hours worked between 10:00 p.m. and 6:00 a.m.; a "Pandemic" premium to reward employees for working during the COVID-19 pandemic; a "Weekend Shift" premium for hours worked between 10:00 p.m. Friday and 10:00 p.m. Sunday; "Holiday" premiums to encourage working on certain holidays; a one-time "Heavy Lifting" premium in appreciation for employees' hard work during staffing challenges; "Perfect Attendance" bonuses; and "Shift Pick-Up" bonuses for picking up shifts. (Walcheske Supp. Decl., ¶ 2.) The availability of these forms of additional compensation changed from time to time during the statutory period, meaning that not all of them were available during the entirety of that period. (*Id.*)

While Defendants disputed that all such forms of additional compensation constituted "nondiscretionary compensation," Defendants agreed to and did provide information concerning all such additional compensation to Plaintiff. (*Id.* at ¶ 3.) Most importantly, Defendants provided "Timecard Detail Reports" for each of the two hundred and twenty-five (225) current and former hourly-paid, non-exempt employees at Midwest Assisting Living Partners III, LLC, the location

at which Plaintiff was employed.[2] (Walcheske Supp. Decl., ¶ 4.) These "Timecard Detail Reports" consisted of hundreds of pages of data, including each individual's: detailed timeclock records showing his/her hours worked as recorded each workday and each workweek; shift premiums (as listed in detail above) received and the number of hours to which those premiums applied each workweek; and bonuses received each workweek. (Walcheske Final Approval Decl., ¶ 6.)

Both parties independently analyzed this data and reached disparate results. (*Compare* Walcheske Supp. Decl., ¶¶ 5-9 *with* Trotier Decl., ¶¶ 5-6.) Specific to Plaintiff, Plaintiff's counsel analyzed the data, determined who received additional compensation in a workweek in which he or she also worked at least forty (40) hours, and created an Excel spreadsheet summarizing and recording the exact amounts such individuals were potentially owed or could potentially recover. (Walcheske Final Approval Decl., ¶¶ 7-8, Ex. A.)

Plaintiff's counsel's summary spreadsheet is attached as Exhibit A to the *Declaration of James A. Walcheske in Support of Final Approval*, filed herewith.[3] As reflected therein, Plaintiff determined that of the 225 individuals for whom data was provided, only 109 individuals worked at least one workweek in which they worked at least 40 hours and also received some form of additional compensation (shift premium(s) and/or bonus(es)).[4] (*See id.* at ¶ 9, Ex. A; *see also* Walcheske Supp. Decl., ¶ 7.) Of those 109 individuals, 80 allegedly were owed between approximately $0.00 and $10.00, 12 allegedly were owed between approximately $20.00 and $30.00, 6 allegedly were owed between approximately $30.00 and $35.00, and one person

---

[2] The putative class in this case consisted of a total of 391 current and former employees of Defendants (121 of which also opted-into, and thus for purposes of settlement are considered members of, the collective). (ECF No. 68, p. 2.)
[3] The redacted portions are counsel's calculations based on those figures that were used during settlement negotiations, as well as counsel's settlement negotiation notes.
[4] This is not to say that only 109 individuals received additional compensation, only that the other 116 individuals for whom data was provided did not suffer any potential damages because in the workweeks in which such individuals received additional compensation, they worked less than 40 hours in a workweek and, therefore, were not owed overtime wages. (*See* Walcheske Final Approval Decl., ¶ 9.)

allegedly was owed approximately $145.00[5]. (Walcheske Final Approval Decl., Ex. A; Walcheske Supp. Decl., ¶ 7.)

Defendants' pay records demonstrated that, each of the 109 individuals who worked at least forty (40) hours in a workweek was compensated with overtime pay at a rate of 1.5 times their hourly rates of pay. (Walcheske Final Approval Decl., ¶ 10.) However, as reflected by the same, Defendants did not include the above-discussed additional compensation when calculating such employees' regular rates for overtime calculation and compensation purposes. (*Id.*) Thus, in determining the amount of overtime allegedly owed to the 109 individuals, Plaintiff's counsel divided the additional compensation received by the number of hours the employee worked in the applicable workweek, divided that further by two (2) (to obtain the 0.5 of the 1.5 of overtime owed), and then multiplied that figure by the number of hours worked in excess of forty (40). (*Id.*)

By way of example, "Anderson, Mc," the fifth person from the top of Exhibit A to the *Declaration of James A. Walcheske in Support of Final Approval*, was determined by Plaintiff's counsel to allegedly be owed $7.77 in overtime wages. (*Id.* at Ex. A.) One of the calculations that went into this total was from the week of October 15, 2018. In that workweek, Ms. Anderson worked a total of 48.18 hours and received $8.33 in weekend shift differentials. (*Id.* at ¶ 11.) She did not receive any other forms of additional compensation during this workweek. (*Id.*) Below is a demonstrative taken from the data provided by Defendants:

| Mon | 10/15/2018 | 01:58 PM - 08:20 PM | 6.37 | | Hour | 48.18 |
| Tue | 10/16/2018 | 01:53 PM - 10:17 PM | 8.4 | | WKD | 8.33 |
| Wed | 10/17/2018 | 01:53 PM - 10:20 PM | 8.45 | | NIT | 0 |

---

[5] As explained in previous filings, this individual was an extreme outlier whose "stars aligned" in that he received additional compensation in workweeks in which he worked an exorbitant amount of overtime. (Walcheske Supp. Decl., ¶ 8.) He received shift premiums in a workweek in which he worked 90 hours (50 overtime hours) and received a $500.00 bonus in a workweek in which he worked 60 hours (20 overtime hours). (*Id.*) Excluding just those two (2) events, this individual allegedly would have been owed approximately $40.00, far more in line with the amounts calculated to be potentially owed to other comparable individuals. (*Id.*)

| | | | | | | |
|---|---|---|---|---|---|---|
| Thu | 10/18/2018 | 01:53 PM - 04:20 PM | 2.45 | | PanPrem | 0 |
| Thu | 10/18/2018 | 04:35 PM - 09:58 PM | 5.38 | | PanPrOT | 0 |
| Fri | 10/19/2018 | 12:45 PM - 06:46 PM | 6.02 | | Bonus | 0 |
| Fri | 10/19/2018 | 07:17 PM - 10:04 PM | 2.78 | | | |
| Sat | 10/20/2018 | 01:56 PM - 10:16 PM | 8.33 | | | |
| | | | 48.18 | | | |

To calculate Ms. Anderson's potential overtime owed for this workweek, Plaintiff's counsel divided the amount of additional compensation ($8.33) by the number of hours worked in the workweek (48.18 hours), to obtain a total of $0.17. (*Id.*) Counsel then divided this figure by two (2) to obtain the unpaid 0.5 of the 1.5 overtime rate, or $0.086. (*Id.*) Multiplying this figure by the number of hours she worked in excess of forty (40) hours this workweek (8.18 hours) brought her alleged amount owed for this workweek to $0.70. (*Id.*)

Plaintiff's counsel conducted calculations such as these for each of the 109 individuals who received additional compensation and worked at least forty (40) hours in a workweek. (*Id.* at ¶ 12.) Counsel believes that this manner of calculation is consistent with Department of Labor guidance and is also the method employed by counsel in its cases involving nondiscretionary compensation and, from experience with handling such matters, is aware that this same form of calculation is employed by defense counsel and damages experts alike. (*Id.*)

As a result of such calculations, Plaintiff's counsel concluded that the 109 individuals allegedly were owed a total of approximately $1,022.94 for the entire group, excluding liquidated damages. (*Id.* at ¶ 13, Ex. A.) In order to establish a maximum potential amount, Plaintiff's counsel further calculated what such individuals allegedly were owed assuming each were awarded liquidated damages of 100% or 2.0x the amounts allegedly owed, which then totaled $2,045.88. (*Id.* at ¶ 13, Ex. A.)

9

In an addition to calculating the 109 individuals' alleged total overtime wages owed, Plaintiff also calculated that, on average, each of the 109 individuals allegedly was owed approximately $9.38 (excluding liquidated damages).[6] (*Id.* at Ex. A; Walcheske Supp. Decl., ¶ 9.) Including liquidated damages of 50% or 1.5x, this equated to an average of $14.07 per person. (Walcheske Supp. Decl., ¶ 9.) Including liquidated damages of 100% or 2.0x, this equated to an average of $18.76 per person. (*Id.*; *see also* Walcheske Final Approval Decl., Ex. A.)

For settlement purposes only, the Parties have agreed that all participating members of the class will receive $15.00, and that all members of the collective will receive $30.00, which is greater than what the vast majority of such individuals potentially could have recovered on their own, (*see* Walcheske Final Approval Decl., Ex. A; Walcheske Supp. Decl., ¶ 10), for a total of $8,685.00.[7] (Settlement Agreement, p. 10.) Given the highly favorable result obtained through the settlement for all members of the class and collective, the Parties believe that their settlement is fair, reasonable, and adequate and, therefore, warrants final approval from this Court.

## IV.   NOTICE PERIOD RESULTS AND PARTICIPATION IN THE SETTLEMENT

As noted by the Seventh Circuit, one of the factors to consider when determining whether a class action settlement is fair, adequate, and reasonable is the reaction of class members to the proposed settlement. *Armstrong*, 616 F.2d at 314.

---

[6] By way of comparison, Defendant calculated that 107 individuals allegedly were owed an average of $6.60 per person. (Walcheske Supp. Decl., ¶ 11.)

[7] This not only assumes that every single class and collective member was impacted and suffered damages despite the Parties' findings, but also represents a 424% increase over the total amount Plaintiff calculated the 109 impacted individuals potentially could recover, inclusive of liquidated damages of 100% or 2.0x. (Walcheske Final Approval Decl., ¶ 14.) This compares favorably with the putative increase of damages as extrapolated across the entirety of the class. Extrapolating the 48% of individuals impacted as determined by Plaintiff's counsel's calculations (109/225 individuals) to the entirety of the 391-person class, the total number of impacted individuals would only be 188 individuals, representing a 172% increase in impacted class members. A 172% increase in damages, even including 100% liquidated damages, would total $3,518.91, less than half of what Plaintiff recovered for the class. (*Id.*)

10

As stated herein, on December 3, 2021, Plaintiff's counsel caused the Court approved Notice to be mailed to all members of the class. (Walcheske Final Approval Decl., ¶ 2.) Pursuant to the Parties' Settlement Agreement and this Court's Preliminary Approval Order, class members had forty-five (45) days, or until January 17, 2022, to opt-out of or otherwise object to the Parties' settlement. (Settlement Agreement, pp. 16-17, 25, 28-29; ECF No. 68, p. 8.)

As of January 17, 2022, only one request for exclusion was received, which was filed with the Court on January 5, 2022. (ECF No. 69.) Notably, that request for exclusion was not lodged due to concerns or displeasure with the Parties' Settlement Agreement, but rather due to her stated "ineligibility to participate in this suit." (ECF No. 69-1.) With the exception of that single request for exclusion, no other requests for exclusion were received and none of the class members objected to the Parties' Settlement. (Walcheske Final Approval Decl., ¶¶ 3-4.)

As a result, and in addition to the 121 members of the collective, 336 of a possible 337 class members are participating in and will receive settlement payments through the Parties' settlement. (*Id.* at ¶ 5.) This high level of participation, without any objections, demonstrates a favorable reaction to the Parties' Settlement Agreement and their respective amounts to be received.

In sum, the Parties' Settlement Agreement warrants final approval from this Court. There was demonstrably a *bona fide* dispute that would have necessitated litigation and determinations from this Court that would have caused the cost of ongoing litigation to vastly exceed the amounts recoverable by the collective and class. Despite those disputes, the Parties' reached an agreement that was negotiated at arm's length and that recovers far more for the vast majority of the members of the collective and class than they could have possibly recovered outside of the Parties' Settlement Agreement. Given such favorable results, the Parties believe that their Settlement

Agreement is fair, reasonable, and accurate and, as demonstrated by a single exclusion and no objections receive, the members of the class agree. Accordingly, the factors identified by the Seventh Circuit are satisfied, and final approval should be granted. *See Armstrong*, 616 F.2d at 314.

## V. PLAINTIFF'S SERVICE AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In the Court's Preliminary Approval Order, the Court determined that Plaintiff's agreed-upon Service Award in the amount of $2,000.00 "falls within the realm of reasonableness for the purposes of preliminary approval." (ECF No. 68, p. 4.) However, the Court noted that, "[n]evertheless, if it appeared that the class members' award had been reduced to accommodate a larger incentive award to Troutman, the court would be inclined to direct the parties to redistribute the benefits." (*Id.* at p. 5.) As explained below, in addition to the Parties' Settlement Agreement, this Court should grant final approval to Plaintiff's Service Award.

As demonstrated in Exhibit A to the *Declaration of James A. Walcheske in Support of Final Approval*, Plaintiff's counsel's analysis of the detailed work records of 225 out of a possible 391 class members showed that 109 such individuals received additional compensation in at least one workweek in which such individuals also worked at least 40 hours. (Walcheske Final Approval Decl., ¶ 9, Ex. A; Walcheske Supp. Decl., ¶ 5.) Counsel's calculations determined that each of those 109 individuals allegedly was owed, on average, $9.38. (Walcheske Final Approval Decl., Ex. A; Walcheske Supp. Decl., ¶ 9.) Including liquidated damages of 50% or 1.5x equated to an average of $14.07, while including liquidated damages of 100% or 2.0x equated to an average of $18.76. (Walcheske Final Approval Decl., Ex. A; Walcheske Supp. Decl., ¶ 9.)

Through the Parties' Settlement Agreement, all participating class members will receive $15.00. (Settlement Agreement, p. 10.) This assumes for settlement purposes that all such

12

individuals are owed overtime wages and is greater than the average potential amount affected individuals allegedly were owed, as calculated by Plaintiff's counsel, and inclusive of liquidated damages of 50% or 1.5x. (Walcheske Final Approval Decl., ¶ 14, Ex. A; Walcheske Supp. Decl., ¶ 9.) In addition, all members of the collective will receive $30.00. (Settlement Agreement, p. 10.) This again assumes for settlement purposes that all such individuals are owed overtime wages and is greater than the average potential amounts impacted individuals allegedly were owed, as calculated by Plaintiff's counsel, and inclusive of liquidated damages of 100% or 2.0x. (Walcheske Final Approval Decl., Ex. A; Walcheske Supp. Decl., ¶ 9.)

Thus, as first stated in the *Declaration of James A. Walcheske in Support of Motions*, and as demonstrated above and throughout the Parties' filings in support of their Settlement Agreement, Plaintiff's Service Award was demonstrably negotiated and agreed to separately from the amounts the Parties agreed would be paid to participating members of the class and collective. (Walcheske Decl., ¶ 23.) Thus, the amounts payable to the collective and class were never reduced or impacted in any way by Plaintiff's Service Award. Accordingly, Plaintiff seeks final approval of the same, which Defendant does not oppose.

### IV. COUNSEL'S AWARD OF ATTORNEYS' FEES AND COSTS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In addition to seeking final approval of the Parties' Settlement Agreement and Plaintiff's Service Award, Plaintiff's counsel further seeks, and Defendants do not oppose, final approval of an award of attorneys' fees and costs in the total amount of $44,214.76. (Settlement Agreement, pp. 9-10.) In the Parties' *Second Renewed Motion for and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement*, Plaintiff's counsel explained the work they performed litigating and resolving this matter, the number of hours expended litigating and resolving this matter, and that counsel billed at their usual and customary

rates of $400.00 per hour throughout the litigation. (Second Renewed Motion, pp. 9-10, 12.) In support of their hours expended, counsel provided their billing records to the Court. (Walcheske Sec. Supp. Decl., Ex. A.) In support of the reasonableness of their hourly rates, counsel provided the Declarations of Larry A. Johnson and David Zoeller, ECF Nos. 66 and 67, respectively.)

In the Parties' *Second Renewed Motion for and Joint Supplemental Brief in Support of Motion for Preliminary Approval of Collective and Class Action Settlement*, Plaintiff's counsel further explained that they were seeking reimbursement of their out-of-pocket litigation costs and administration expenses. (Second Renewed Motion, pp. 8, 12-13.) At that time, such expenses totaled $3,671.25, and counsel anticipated that, after additional administration costs, its unreimbursed expenses could total approximately $6,971.25. (*Id.* at pp. 12-13; Walcheske Second Supp. Decl., ¶¶ 26-27.) In support thereof, counsel provided an accounting of its expenses to the Court. (Walcheske Second Supp. Decl., Ex. B.)

In its Preliminary Approval Order, this Court preliminarily approved counsel's hourly rate, but stated that "in their motion for final approval of their fees, counsel should [submit their hours expended litigating and resolving this matter, but] omit the time they spent on the second and third preliminary approval motions." (ECF No. 68, p. 7.)

Updated billing records reflecting counsel's time expended in this matter to date, excluding hours devoted to the Parties' second and third preliminary approval motions are provided as Exhibit B to the *Declaration of James A. Walcheske in Support of Final Approval*. As detailed therein, Plaintiff's counsel devoted 109.7 hours litigating and resolving this matter through January 28, 2022, excluding the hours indicated.[8] (*Id.* at Ex. B.)

---

[8] Additional work was performed beyond this date. However, it is not included in this Exhibit and is not included for purposes of this Motion. (*See* Walcheske Final Approval Decl., ¶ 16.)

Assuming the Parties obtain final approval of their Settlement Agreement, Plaintiff's counsel anticipates engaging in additional activities including communicating and corresponding with Plaintiff, Defendants' counsel, and members of the collective and class, answering questions they may have and working with all such parties to ensure that all participating members of the collective and class receive payment. (*Id.* at ¶ 16.) Because these activities will be performed subsequent to obtaining final approval of Plaintiff's counsel's fee award, counsel will not be compensated for the same. (*Id.*)

As explained in previous filings, at the outset of this matter, Plaintiff's counsel accepted the case on a contingency basis, through which Plaintiff agreed to compensate Plaintiff's counsel with the greater of forty percent (40%) of any recovery, exclusive of costs, should a recovery be obtained, or the actual amount of attorneys' fees and costs billed or settled for. (Walcheske Sec. Supp. Decl., ¶ 14.) Counsel structures its agreements in such a manner because of cases such as this where the anticipated recovery is relatively "low" and, therefore, not suitable for division as a class fund. (*Id.*) Pursuant to its fee arrangement with Plaintiff, Plaintiff's counsel agreed to be responsible for all attorneys' fees and costs in the event of an adverse result and, to date, counsel has not received any compensation for its time spent on the case or reimbursement for its costs expended investigating, litigating, administrating, and resolving this matter. (*Id.* at ¶ 15.)

Because counsel's requested reimbursement of fees and costs is not a percentage of a common settlement fund, Plaintiff motions this Court for an award of attorneys' fees and costs via the "lodestar" method, which is determined by multiplying counsel's "reasonable" hourly rate by the number of hours reasonably expended on the case. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659

(7th Cir. 2007); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999); *Bankston v. Ill.*, 60 F.3d 1249,1255 (7th Cir. 1995).

In its Preliminary Approval Order, this Court preliminarily approved counsel's hourly rate of $400.00 per hour. (ECF No. 68, p. 7.) Applying the lodestar method in this case by multiplying counsel's hourly rate of $400.00 per hour times their 109.7 hours expended, excluding the hours indicated, yields total attorneys' fees of $43,880.00. (Walcheske Final Approval Decl., ¶16.)

In addition to its attorneys' fees, and as part of the total award of $44,214.76 for which counsel seeks this Court's final approval, counsel's litigation-related costs total $5,286.40 to date. (*Id.* at ¶ 17.) This includes the filing fee ($400.00), postage ($2.00), and administration costs ($4,884.40). (*Id.*)

Taken together with counsel's attorneys' fees to date, Plaintiff's counsel's total unreimbursed attorneys' fees and costs total $49,166.40, or $4,951.64 more than the amount counsel asks this Court to approve ($44,214.76). (*Id.* at ¶ 18.) Thus, Plaintiff believes that counsel's requested attorneys' fees and costs as negotiated and agreed upon by the Parties are fair and reasonable and should be approved by this Court.

## CONCLUSION

For all the reasons stated herein, as well as all those set forth in the Parties' prior filings in support of preliminary approval, the Parties respectfully request that this Court:

1. Approve the Parties' Settlement Agreement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23;

2. Approve the Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act;

3. Order that the Parties, all members of the collective, and all class members who did not timely and properly opt-out of the Parties' Settlement Agreement (the "Final Settlement Classes") are bound by the Parties' Settlement Agreement;

4. Approve Plaintiff's Service Award in the amount of $2,000.00;

5. Approve Plaintiff's counsel's award of fees and costs in the amount of $44,214.76;

6. Order that Plaintiff's released claims are dismissed with prejudice;

7. Order that the Final Settlement Classes' released claims, as defined by the Parties' Settlement Agreement, are dismissed with prejudice; and

8. Order that the claims of the non-participating class member who previously opted out of the Parties' Settlement Agreement be dismissed without prejudice.

Dated:  February 2, 2022          By: s/ *James A. Walcheske*
                                  James A. Walcheske, State Bar No. 1065635
                                  Scott S. Luzi, State Bar No. 1067405
                                  Walcheske & Luzi, LLC
                                  235 N. Executive Drive, Suite 240
                                  Brookfield, Wisconsin 53005
                                  Telephone: (262) 780-1953
                                  Email:  jwalcheske@walcheskeluzi.com
                                  Email:  sluzi@walcheskeluzi.com

                                  *Attorneys for Plaintiff*

Dated:  February 2, 2022          By:  s/ *Geoffrey S. Trotier*
                                  Geoffrey S. Trotier, State Bar No. 1047083
                                  Craig T. Papka, State Bar No. 1093078
                                  von Briesen & Roper, s.c.
                                  411 E. Wisconsin Avenue, Suite 1000
                                  Milwaukee, Wisconsin 53202
                                  Telephone: (414) 287-1369
                                  Email: gtrotier@vonbriesen.com
                                  Email: cpapka@vonbriesen.com

                                  *Attorneys for Defendants*